**LIFSCHULTZ FAST FREIGHT,**
Plaintiff,

v.

**JBS WAREHOUSING, INC., Defendant.**

No. 92 C 6484.

United States District Court,
N.D. Illinois, E.D.

Dec. 20, 1992.

Mark L. Dressel, Morgan, Lanoff, Denniston & Madigan, Ltd., Chicago, IL, Robert B. Walker, Joseph L. Steinfeld, Jr., John T. Siegler, Sims, Walker & Steinfeld, DC, for plaintiff.

William D. Brejcha, Abramson & Fox, Chicago, IL, for defendant.

## ORDER

NORGLE, District Judge.

Before the court is defendant JBS Warehousing, Inc.'s ("JBS") motion to stay proceedings. The motion is granted for the following reasons.

## FACTS

Plaintiff Lifschultz Fast Freight ("Lifschultz") is a carrier seeking to collect an unpaid freight bill for freight transported pursuant to the authority issued by the Interstate Commerce Commission ("ICC") and subject to tariff rates and rules filed with the ICC. According to the complaint, Lifschultz transported freight tendered by JBS and issued invoices in the total amount of $6,110.82, which amount remains unpaid. JBS, in response to the suit filed September 24, 1992, moves the court to stay proceedings until the ICC determines whether the rate increase Lifschultz seeks to recover is unreasonable. In its motion, JBS asserts that it fully paid the original freight charges but that Lifschultz, which no longer operates a motor carrier business, is seeking to collect additional freight charges which amount to a forty percent

**52**

increase from the original amount. JBS further asserts that Lifschultz is claiming that the discounts it set forth in its tariffs filed with the ICC and offered to JBS were somehow improper, yet that determination can only be made by the ICC in the first instance. Superficially, the $6,110 involved in this case may appear insignificant, yet the matter may prove to have larger implications in the motor carrier industry as the issue frequently resurfaces.

## DISCUSSION

■ The court agrees with JBS that the determination whether the rate increase is unreasonable, whether its discounts were proper, and whether the nondiscounted rates now sought by Lifschultz are unreasonable is one properly to be made by the ICC and not the court. Consequently, a stay is appropriate pending a referral of the issue to the ICC.

■ Congress has conferred on the ICC extensive supervisory and regulatory power over the motor carrier industry, and the ICC has accordingly determined that ICC approval of rebilling by carriers is required in order for it to directly supervise undercharge claims (*see* Ex Parte No. MC–208, *Nonoperating Motor Carriers–Collection of Undercharges,* 8 I.C.C.2d 742, 751–52 (1992)). Thus, carriers cannot unilaterally deviate from previously billed tariff or contract rates without prior ICC approval. JBS claims that Lifschultz has failed to secure such approval. Further, the ICC possesses special expertise in the motor carrier industry and there exists a need for uniformity in matters relating to the industry, such as rate reasonableness. Accordingly, primary jurisdiction over all issues regarding the lawfulness, applicability, and reasonableness of tariffs, over what constitutes bona fide contract carriage, and over credit and collection practices by motor carriers lies with the ICC. *United States v. Western Pac. R.R.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *Atlantis Express, Inc. v. Standard Transp. Servs.,* 955 F.2d 529 (8th Cir.1992). Under these circumstances, the court finds that a stay and referral is proper in this case.

■ The court therefore disagrees with the approach taken by the Fourth and Fifth Circuits, as well as the United States District Court for the Southern District of New York, that a stay pending referral of the reasonableness issue to the ICC is contrary to the provisions and purpose of the Interstate Commerce Act. *See In re Carolina Motor Express, Inc.,* 949 F.2d 107 (4th Cir.1991), *cert. granted, Reiter v. Cooper,* —— U.S. ——, 112 S.Ct. 1934, 118 L.Ed.2d 541 (1992); *In re Caravan Refrigerated Cargo, Inc.,* 864 F.2d 388 (5th Cir. 1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990); *Lifschultz Fast Freight, Inc. v. Rainbow Shops, Inc.,* 784 F.Supp. 89 (S.D.N.Y.1992).

Instead, the court believes that the doctrine of primary jurisdiction, which applies to issues that fall within the special competence of an administrative agency pursuant to an extensive regulatory scheme, mandates a referral to the ICC for it to exercise its expertise. The court therefore agrees with the First Circuit which held in favor of referral in *Delta Traffic Serv., Inc. v. Transtop, Inc.,* 902 F.2d 101 (1st Cir.1990), as well as the Third Circuit in *Delta Traffic Serv., Inc. v. Occidental Chem. Corp.,* 846 F.2d 911 (3d Cir.1988). Though the Second Circuit explicitly refused to decide the issue of whether a shipper that has failed to pay freight charges may assert an "unreasonable rate" defense to a suit by a carrier who has promptly billed for freight, that court in *Duffy v. BMC Industries* did allow the district judge the discretion to stay the action pending reference of the issue of unreasonableness to the ICC. *Duffy v. BMC Indus., Inc.,* 938 F.2d 353, 357–58 (2d Cir.1991); *see also Delta Traffic Serv., Inc. v. Georgia–Pacific Corp.,* 936 F.2d 64, 66 (2d Cir.1991) (carrier could not collect on judgment for alleged underpayment until ICC determined reasonableness of rates where application to ICC for such determination had been made, notwithstanding that judgment had already been entered). The court is also in accord with other district courts in the Seventh Circuit which have addressed the precise issue. *See Lifschultz Fast Freight, Inc. v. National Mfg. Co.,* 804 F. Supp. 1059 (N.D.Ill.1992); *Over-*

*land Express, Inc. v. International Multifoods,* 765 F.Supp. 1386 (S.D.Ind.1990).

 There is further logic to support this position. A rate is not enforceable if the ICC finds it unreasonable. *Maislin Indus., U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 127–29, 110 S.Ct. 2759, 2767, 111 L.Ed.2d 94 (1990). Thus, if JBS is correct, Lifschultz's rate is not enforceable from the beginning and the court should not allow recovery for the unenforceable charge. *See In re Carolina,* 949 F.2d at 113 n. 3 (Hall, J., dissenting). If it were otherwise, the court would be sanctioning a judgment in favor of a carrier that is not entitled to recover and then would be placing the burden on the shipper to recoup its loss.

The court need not specify a specific threshold level of unreasonableness a defendant requesting a stay is required to overcome, beyond a mere assertion that a rate is unreasonable, in order to obtain a stay for referral (*see Overland Express,* 765 F.Supp. at 1388) because the court finds that the circumstances here justify a stay. JBS asserts that Lifschultz is seeking to collect additional interstate freight charges beyond that which was initially charged and fully paid. Further, according to JBS, Lifschultz seeks to recover what amounts to a forty percent increase in freight charges. A determination that Lifschultz's discount scheme set forth in its tariffs and offered to JBS was improper and therefore justifies a forty percent increase in billing is a determination properly made by the ICC in the first instance.

### CONCLUSION

For the reasons stated above, the court grants JBS's motion for a stay of proceedings pending a referral to the ICC.

IT IS SO ORDERED.